

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-16-00002-CR

---

DEMITRES COLEMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 15F0535-005

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss
Concurring Opinion by Justice Burgess

## MEMORANDUM OPINION

At Demitres Coleman's trial on one count of indecency with a child, Beth Green,[1] by sexual contact and two counts of aggravated sexual assault of Green, the jury heard evidence from two other alleged victims of extraneous sexual offenses that had never been prosecuted. Both of Coleman's points of error on appeal of his convictions and sentences[2] involve those extraneous offenses. We affirm the judgment of the trial court, because (1) the trial court did not err in admitting extraneous-offense evidence and (2) the extraneous-offense charge was erroneous, but not egregiously harmful.

*(1)    The Trial Court Did Not Err In Admitting the Extraneous-Offense Evidence*

Coleman contends the trial court erred in allowing evidence of extraneous sexual offenses over his Rule 403 objection. We find no error.

The State notified Coleman that, at trial, it intended to introduce evidence that Coleman had committed extraneous sexual offenses against Amanda Jefferson and Suzy Smith when they were children. By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, introduce evidence that the defendant has committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code

---

[1]To protect their privacy, we have assigned pseudonyms to the child victims discussed in this opinion. *See* Tex. R. App. P. 9.10(a)(3).

[2]For the offense of indecency with a child, Coleman was sentenced to twenty years' imprisonment and was ordered to pay a $10,000.00 fine. On each conviction for aggravated sexual assault, Coleman was sentenced to life imprisonment and was ordered to pay a $10,000.00 fine.

CRIM. PROC. ANN. art. 38.37, §§ 1–2 (West Supp. 2016). Before such evidence is introduced, the trial court must conduct a hearing outside of the presence of the jury and must find that the evidence in question will adequately support a jury finding beyond a reasonable doubt that the defendant committed the separate offense. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a (West Supp. 2016). Additionally, "the admission of evidence under Article 38.37 'is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice.'" *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.— Texarkana 2015, pet. ref'd)).

At a pretrial hearing, the trial court made its Article 38.37, Section 2-a, determination after hearing testimony from Jefferson and Smith about the extraneous offenses. During that hearing, Smith testified that Coleman, who was dating her mother in 2007, would engage in inappropriate sexual touching with her and that he began having vaginal intercourse with her when she was fourteen years old. Smith said that Coleman continued to have sex with her "eight or more times a month" for over a year. Cross-examination established that Coleman had not yet been convicted for any acts against Smith and that Smith told her brother that she was joking about her allegations against Coleman.

Amanda Jefferson testified that Coleman, while dating Amanda's mother, came into her bedroom, got under the bedcovers with her, and touched her on her breasts and her sexual organ over her clothing. Jefferson was fifteen at the time of the incident. After the incident, Jefferson

3

locked herself in the bathroom, and, by peeking through gaps between the door and the frame, witnessed Coleman masturbating.

Green, the victim in this case, also testified that she was abused by Coleman when she was nine or ten years old, at a time when Coleman was dating her mother. Recalling the first offensive encounter with Coleman, Green testified that he gave her and her sister a bath, put them in their mother's bed, lay down with them, and molested Green after she fell asleep. Green said, "[W]hen I woke up, I felt someone touching my vagina, but just on the outside, not penetrating . . . and I just laid there and played like I was asleep, because I was scared." In another incident where Coleman was teaching Green to swim, Green said that he moved her "swimsuit to the side and put his mouth on [her] vagina." Green further testified that, when she was ten, Coleman began having sexual intercourse with her.

After this evidence was presented at the preliminary hearing, Coleman objected to the introduction of the extraneous-offense evidence on the grounds that Article 38.37 was unconstitutional and that, under Rule 403 of the Texas Rules of Evidence, the probative value of the extraneous evidence was substantially outweighed by the danger of unfair prejudice.[3] For purposes of Section 2-a, the trial court found that the evidence, if admitted at trial, would be adequate to support a jury finding, beyond a reasonable doubt, that Coleman committed the separate offense. Additionally, after Coleman admitted that Green's credibility would be an issue at trial, the trial court ruled that the extraneous-offense evidence would be admissible under Rule

---

[3]As Coleman points out, this Court has previously overruled the argument made by Coleman at the Section 2-a hearing that Article 38.37 is unconstitutional because it violates a defendant's due process rights. *See Hill v. State*, No. 06-15-00168-CR, 2016 WL 3382195, at *3–4 (Tex. App.—Texarkana June 12, 2016, pet. ref'd) (mem. op., not designated for publication).

4

403.  It reasoned that the evidence was "more probative than prejudicial," "based on the . . . credibility issues with regard to the victim, [and] based on the fact that there[was] going to be lack of physical evidence or eyewitness testimony."

In spite of this record of Coleman's Rule 403 objections at the Section 2-a hearing, the State argues that Coleman failed to preserve his Rule 403 argument for our review because Coleman lodged no Rule 403 objection to the extraneous-offense testimony subsequently admitted at trial.[4]  We disagree.

"The court must decide any preliminary question about whether . . . evidence is admissible," and a ruling on "a preliminary matter . . . normally preserves nothing for appellate review."  TEX. R. EVID. 104; *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).  On the other hand, "[w]hen the court hears a party's objections outside the presence of the jury and rules that the evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."  TEX. R. EVID. 103(b).  We have previously held that, when a defendant makes a Rule 403 objection before opening statements, a trial court's ruling that it is "going to allow" the evidence constitutes a ruling under Rule 103(b).  *Smith v. State*, 424 S.W.3d 588, 593 (Tex. App.—Texarkana 2013, no pet.) (citing *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991)); *but see Brock v. State*, 495 S.W.3d 1, 12 (Tex. App.—Waco

---

[4]To preserve a complaint for appeal, a party must lodge a timely and specific objection, obtain an adverse ruling, and then either "object each time the inadmissible evidence is offered or obtain a running objection."  *See* TEX. R. APP. P.  3.1(a); *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *see Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

2016, pet. ref'd). Applying *Smith*, we conclude that Coleman preserved error on his Rule 403 complaint.

We also conclude, however, that the trial court did not err in overruling Coleman's Rule 403 objection. "We review a trial court's admission of evidence under an exception to the hearsay rule using an abuse-of-discretion standard." *Fahrni*, 473 S.W.3d at 497 (citing *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "We will not reverse the trial court's ruling unless it 'was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor*, 268 S.W.3d at 579); *see Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. During the hearing, Coleman argued merely that the "danger of unfair prejudice greatly outweigh[ed the] probative value" of the extraneous-offense testimony. In undertaking a Rule 403 analysis, the trial court must balance:

> (1) how compellingly the evidence serves to make a fact of consequence more or less probable . . .; (2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence; and (4) the force of the proponent's need for this evidence to prove a fact of consequence.

*Taylor v. State*, 93 S.W.3d 487, 506 (Tex. App.—Texarkana 2002, pet. ref'd).

As for the first factor, evidence admitted under Article 38.37 of the Texas Code of Criminal Procedure is probative of a defendant's character or propensity to commit sexual assaults on

6

children.  *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd). The evidence is also probative to support the victim's credibility, admittedly an issue at trial.  "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such "he said, she said" cases [involving sexual assault].'"  *Id.* at 883–84 (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)).   Also, as described further below, the extraneous-offense evidence established that Coleman had a pattern of assaulting daughters of the women he dated after moving in with them. Because sexual assaults against Green occurred in a manner consistent with the pattern established by the extraneous-offense evidence, the extraneous-offense evidence compellingly helped establish Green's veracity.  We conclude that this factor weighed strongly in favor of admission.

As for the next factor, Coleman points to our opinion in *Hill v. State*, No. 06-15-00168-CR, 2016 WL 3382195 (Tex. App.—Texarkana June 17, 2016, pet. filed) (mem op., not designated for publication).  There, we noted that "[t]he circumstances and lurid details of the prior offense were not presented to the jury—and not much time was taken to prove, introduce[,] and present the evidence of the prior conviction."  *Id.* at *5.  In contrast, the lurid details of Coleman's offenses against Jefferson and Smith were before the jury.

The inherently inflammatory and prejudicial nature of extraneous-offense evidence of sexual offenses against children does tend to suggest a verdict on an improper basis.  *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd); *see Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).   However, Coleman requested and obtained a limiting instruction that informed the jury that it could only consider the evidence for the limited purpose

7

of character conformity if it found the extraneous offenses were proven beyond a reasonable doubt.

We presume that the jury followed the trial court's instructions. *See Resendiz v. State*, 112 S.W.3d

541, 546 (Tex. Crim. App. 2003). During closing argument, Coleman reminded the jury:

> Now, I don't believe that the State has met their burden on Miss [Smith], either; but even if they have, what's important to remember is, just because they have met that burden, just because they have, if they have--and I'm not saying they have--it is not enough to say that that alone is sufficient evidence to convict Demitres Coleman of what he is alleged to have done to [Green].

In the jury charge, the jury was instructed that it had to conclude that the State proved the elements

of the offenses against Green beyond a reasonable doubt in order to find Coleman guilty.

Nevertheless, we find that the second factor weighed against admission. *Newton*, 301 S.W.3d at

320.

As for the third factor, in *Pawlak*, the Texas Court of Criminal Appeals warned that

"admissible prejudicial evidence can become *unfairly* prejudicial by its sheer volume." *Pawlak*,

420 S.W.3d at 811. That is of no concern here. The record establishes that Jefferson's and Smith's

direct testimony, combined, comprised a total of only twenty-eight pages.[5] The third factor

weighed in favor of admission.

The last factor also supports admission of the extraneous-offense evidence. The State's

need for the evidence was great, given that Coleman planned to challenge Green's credibility.

Additionally, as the trial court pointed out, there was no eyewitness or physical evidence to support

---

[5]Coleman notes that the State's case-in-chief comprised a total of 126 pages.

8

the State's allegations against Coleman. Essentially, without the extraneous-offense evidence, the case was a classic "he said, she said" case.

After weighing the Rule 403 factors, we are unable to conclude that the trial court abused its discretion in admitting Jefferson's and Smith's testimony. *See Bradshaw*, 466 S.W.3d at 884; *Fisk v. State*, No. 04-15-00667-CR, 2016 WL 6775596, at *6 (Tex. App.—San Antonio Nov. 16, 2016, no pet. h.); *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

Moreover, the jury heard much the same evidence from Detective Michael Sutton,[6] who testified to his receipt of a report that Coleman had committed indecency with a child against Jefferson, that Sutton spoke with Jefferson, and that investigation of Jefferson's allegations led him to Smith and Green, who both said that they were also sexually assaulted by Coleman. Sutton testified that he observed a pattern in Coleman's behavior based on his interviews with Green, Jefferson, and Smith, namely that he dated all of his victims' mothers, would move in with them, and would "establish the . . . victims . . . as dishonest in the house" before sexually assaulting them. Further, according to Sutton, Coleman gave gifts to Jefferson, Smith, and Green after sexually assaulting them.[7]

---

[6]"[A]ny error in admitting the evidence is cured where the same evidence comes in elsewhere without objection." *Skeen v. State*, 96 S.W.3d 567, 575 (Tex. App.—Texarkana 2002, pet. ref'd). Coleman did not object to Sutton's testimony on Rule 403 grounds.

[7]Although a hearsay objection to this testimony was sustained, Coleman did not ask the trial court to instruct the jury to disregard the testimony or to strike the testimony.

9

*(2)*     *The Extraneous-Offense Charge Was Erroneous, But Not Egregiously Harmful*

Coleman also complains that the jury charge on punishment erroneously failed to instruct the jury that, before an extraneous crime or bad act could be considered during punishment, it must have been proven beyond a reasonable doubt. He further argues that the two life sentences he received for aggravated sexual assault of a child demonstrate that he was egregiously harmed by the error.

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32); *see Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

10

The trial court's charge read:

**Burden of Proof for Wrongful Acts**

During the trial, you heard evidence that the defendant may have committed wrongful acts that did not result in any criminal charges or that did not result in criminal convictions. If you find, beyond a reasonable doubt, that the defendant did, in fact, commit that wrongful act. Those of you who believe the defendant did the wrongful act may consider it.

The last two sentences of the above paragraph create the confusion cited by Coleman.

Specifically, Coleman argues that the trial court's charge violates Article 37.07, Section 3 of the Texas Code of Criminal Procedure, which reads,

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2016). He contends that the trial court's instruction left out the requirement that the jury consider extraneous crimes or bad acts only if the evidence showed beyond a reasonable doubt that they had been committed, and instead allowed the jury to consider extraneous crimes and acts if they believed the defendant did the wrongful act. We agree with Coleman's conclusion that the jury charge is erroneous, as worded.

In addressing whether Coleman was harmed by the error, we examine "the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole." *Sanchez v. State*, 376 S.W.3d 767, 774–75 (Tex. Crim. App. 2012) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (citing TEX. CODE CRIM. PROC.

11

ANN. art. 36.19 (West 2006)). The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Id.* at 775. Where, as here, a defendant failed to object to the jury charge, we review the record for egregious harm. *Id.* "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). Additionally, Coleman must "have suffered actual harm, not merely theoretical harm." *Sanchez*, 376 S.W.3d at 775.

In spite of the language of the punishment charge, we find for two reasons that the jury was well aware that it could consider extraneous crimes or bad acts only if it found beyond a reasonable doubt that the evidence showed they had been committed. First, although the charge contained an obvious punctuation error, if the last two sentences of the punishment charge were combined—the apparent intent of the charge—it would read, in a manner that would remove Coleman's complaint, as follows: "If you find, beyond a reasonable doubt, that the defendant did, in fact, commit that wrongful act[, t]hose of you who believe the defendant did the wrongful act may consider it."

Second, we believe that the jurors knew that the last two sentences of the punishment charge were meant to be combined because they also sat during the guilt/innocence portion of the trial, during which this was charged:

> During the trial, you heard evidence of other incidents of indecency with a child and sexual assault of a child connected with Amanda Jefferson (a pseudonym) and Suzy Smith (a pseudonym) when they were under seventeen years of age. You are not to consider this evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful acts. [8]

---

[8]The punishment phase of the trial began immediately after the conclusion of the guilt/innocence phase.

12

Additionally, before Jefferson's and Smith's testimony, the trial court gave the following limiting instruction to the jury:

> [T]he following witness is being offered for a limited purpose concerning alleged offenses against a child under 17 years of age other than the complainant alleged in the indictment. Such offense or offenses, if any, may only be considered if you believe beyond a reasonable doubt that the defendant committed such offenses, if any; then you may consider said evidence for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. That's the limited purpose of this testimony.

During closing arguments at guilt/innocence, Coleman and the State both explained that the State had the burden to prove extraneous acts beyond a reasonable doubt.

The obviousness of the punctuation error in the punishment charge, the reiteration of the requirement that extraneous matters be proven beyond a reasonable doubt during guilt/innocence, and the common sense of the jurors, all suggest that the jury was not confused by the error in the punishment charge. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013). Therefore, it is probable that the jury resolved the issue in accordance with the law. *See id.*

Yet, Coleman argues that the jury's harsh punishment assessment establishes that he was egregiously harmed because he had not previously been convicted of a felony offense. After considering the state of the evidence as a whole, we cannot say that actual egregious harm is shown.

Green, Jefferson, and Smith presented the jury with compelling evidence. During guilt/innocence, Jefferson and Smith testified in detail about the sexual abuse committed by

13

Coleman.[9]  Sutton's testimony corroborated Jefferson and Smith's allegations against Coleman and established the pattern of behavior used by Coleman to select and sexually assault Green, Jefferson, and Smith.  The jury was informed that it could consider the evidence presented during guilt/innocence at the punishment phase of the trial.

Smith, who was the only victim to testify during punishment, informed the jury that she was sexually assaulted "eight or nine times a month" for a year.  She also testified that Coleman did not work, sold drugs for money, and used drugs.  Smith further told the jury that, on one occasion, Coleman forced her to engage in sexual acts with his friend while he watched.  She described the emotional toll Coleman's actions had on her as a teenager.

In light of the record of the trial as a whole, we conclude that Coleman was not egregiously harmed by the punishment jury charge.  Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


CONCURRING OPINION

I concur with the majority opinion.  I write separately to explain why I believe the defendant preserved error on his Rule 403 objection under Rule 103(b) of the Rules of Evidence, even though the objection was made in a hearing on a preliminary question subject to Rule 104(a).

---

[9]Coleman's cross-examination of Jefferson, comprising four pages of transcript, merely rehashed Jefferson's direct testimony.  His cross-examination of Smith, comprising six pages of transcript, established the timeframe of the allegations and Smith's reluctance to initially discuss her allegations against Coleman.  His cross-examination of Green comprised less than four pages and established that she was not taken to a Child Advocacy Center.

Rule 103(b) states, "**Not Needing to Renew an Objection.** When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal." TEX. R. EVID. 103(b). At the same time, Rule 104(a) states, "**In General.** The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." TEX. R. EVID. 104(a); *see* TEX. R. EVID. 101(e)(1).

At first blush, under a literal reading of these Rules, it appears that any objection made during a hearing on a preliminary question under Rule 104(a) would not be preserved under Rule 103(b) because, except for the Rules related to privilege, the Texas Rules of Evidence do not apply "to the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility." TEX. R. EVID. 101(e)(1); *see* TEX. R. EVID. 104(a). However, when Texas Rule 103(b) is compared to Rule 103(b) of the Federal Rules of Evidence, and when the results of that comparison are evaluated in light of Texas caselaw, it becomes clear that Rule 103(b) must still apply to hearings on preliminary questions of admissibility, notwithstanding the applicability exception in Rule 104(a).

## I.      The Purpose of Rules 103(b) and 104(a)

To understand why and when Rule 103(b) applies to a trial court's ruling on the admissibility of evidence under Rule 104(a), it is important to examine each Rule's purpose.

Rule 104(a) governs the question of admissibility of evidence at trial. By contrast, Rule 103(b) governs the preservation of error for appeal.[10] Because "the court is not bound by evidence rules" in deciding "any preliminary question about whether . . . evidence is admissible," then only those Rules bearing on the determination of whether evidence is admissible are inapplicable under Rule 104(a).[11] Because Rule 103(b) does not determine the admissibility of evidence, it is not covered by Rule 104(a)'s applicability exception. Therefore, because it is not a true rule of evidence, but is instead an error preservation rule, Rule 103(b) can apply to preserve error related to an objection raised during a hearing on a preliminary question conducted under Rule 104(a).

Yet, Rule 103(b) does not apply to all trial court rulings made on preliminary questions under Rule 104(a), but only to evidentiary rulings made "outside the presence of the jury" and where "the court . . . rules that evidence is admissible. . ." TEX. R. EVID. 103(b). Of course, in most instances there is no practical difference between an order denying a motion to exclude evidence and an order admitting the evidence; typically, both orders are two sides of the same coin. But that is not always the case. For example, a trial court's order denying a motion *in limine* does not admit the evidence; the evidence is not actually admitted until it is offered before the jury. Therefore, an issue arises in this case about whether the trial court made a ruling "that evidence is admissible" under Rule 103(b) when it overruled the defendant's pretrial objection.

---

[10]Rule 103(a) is entitled "Preserving a Claim of Error." *See* TEX. R. EVID. 103(a).

[11]For example, the Texas Rules of Evidence should not apply to prevent a trial court from hearing outcry testimony outside of the presence of the jury for the purpose of determining whether the outcry testimony is admissible.

## II.    The Federal Rules of Evidence

Specifically, a question arises whether Rule 103(b) only applies after a jury has been selected and trial has begun, or whether it also applies to pretrial hearings.  In deciding this issue, it is helpful to contrast the language of Texas Rule 103(b) to Federal Rule 103(b).

Federal Rule 103(b) states, "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  FED. R. EVID. 103(a).  Texas Rule 103(b) omits the language "either before or at trial." *See* TEX. R. EVID. 103(b).  The omission of this language could be read as an intent that Texas Rule 103(b) only applies to objections made after a jury has been selected.  However, other distinctions between the two rules suggest a different interpretation.  Texas Rule 103(b) also applies "when the court hears a party's objections outside the presence of the jury," whereas, the federal rule makes no mention of a jury.  TEX. R. EVID. 103(b); *see* FED. R. EVID. 103(a).  Also, the Texas rule is limited to rulings "that evidence is admissible," whereas the federal rule has no such limitation.

Moreover, both pretrial hearings and trial hearings where the jury has been excused from the courtroom are hearings "outside the presence of the jury."  Therefore, the language "outside the presence of the jury" does not mean that Texas Rule 103(b) cannot apply prior to jury selection.  Thus, the language "outside the presence of the jury" in Texas Rule 103(b) suggests a distinction between jury and non-jury trials rather than between pretrial preliminary hearings and preliminary hearings held after the jury has been selected and trial begun.  Accordingly, Texas Rule 103(b) is

17

not a broad preservation rule like Federal Rule 103(b), but is a limited preservation rule applicable only to jury trials and then only to rulings admitting evidence.

## III.     *Gueder v. State*

Our conclusion is buttressed by the Texas Court of Criminal Appeals' ruling in *Gueder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003).   There, the defendant waived his Fifth Amendment right to remain silent and elected to testify at trial.  *Id*. at 12.    Before beginning his direct examination, he moved to "prevent the State from impeaching his testimony with any prior convictions because the prosecution had failed to provide him with written notice under Rule 609(f)." *Id*.   The trial court denied his motion, and Gueder did not renew his objections when the State cross-examined him about his criminal history.  *Id*.  The Court of Criminal Appeals held that he had nevertheless preserved his Rule 609(f) objection under Rule 103(b).  *Id*. at 15.

> The court first noted that, under Rule 33 of the Texas Rules of Appellate Procedure,
>
> A proper objection is one that is specific and timely.  Further, with two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered.  The two exceptions require counsel to either (1) obtain a running objection, or (2) request a hearing outside the presence of the jury.

*Id*. at 13 (citing *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003)); *see also* TEX. R. APP. P. 33.1(a).  The court then held that the second exception noted in *Martinez* is contained in Rule 103(b).  *Gueder*, 115 S.W.3d at 13.

Although the Court of Criminal Appeals acknowledged that a motion *in limine* does not satisfy the preservation requirements of Rule 103(b) and Rule 33.1 because "it is[,] . . . by its nature, subject to reconsideration by the court throughout the course of trial," the Court found that Gueder's objection was not a motion in limine, but was instead an objection outside the presence

18

of the jury under Rule 103(b), because his "request . . . *sought a definitive final ruling* on a timely and specific motion to exclude evidence." *Id.* at 15 (emphasis added). Accordingly, *Gueder* holds that overruling of an objection to evidence is a ruling that the evidence is admissible under Rule 103(b) where the trial court makes a "definitive final ruling on a timely and specific motion to exclude evidence." *Id.*

Therefore, a consideration of the purpose of Texas Rules of Evidence 103(b) and 104(a), the contrast of the Federal Rules of Evidence, and the ruling in *Gueder* naturally leads to the conclusion that Rule 103(b) must apply to Coleman's objection at the Rule 104(a) hearing.

## IV.    Application

In the present case, the trial court heard Coleman's Rule 403 objection during a preliminary hearing required by Article 38.37, Section 2, of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West 2015). As the majority notes, that statute allows the introduction of certain extraneous-offense evidence in specifically enumerated offenses, "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence." *Id.* Section 2-a of that statute provides that prior to admitting such evidence, the trial court must "conduct a hearing out of the presence of the jury" to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a.

Coleman asserted his Rule 403 objection during the course of that hearing, asking the trial court to find that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The trial court made the findings required by Article 38.37, Section 2-a, and

19

found that the evidence was "more probative than prejudicial." The trial court concluded, "The Court's going to admit that testimony, pursuant to 403." Accordingly, the trial court made a "definitive final ruling on a timely and specific motion to exclude evidence" as required by Rule 103(b). *Gueder*, 115 S.W.3d at 15.

The present case is distinguishable from *Gueder* in one key respect, however. Namely, the Article 37.38, Section 2-a, hearing in this case was held before trial began, whereas the hearing in *Gueder* occurred after the jury had been selected and immediately before the defendant testified. Nevertheless, as explained below, we see this as a distinction without a difference.

There is no compelling reason to hold that a "definitive final ruling" admitting evidence made in a pretrial preliminary hearing does not preserve error, but a "definitive final ruling" made during trial does, particularly where the preliminary hearing is required by a statute such as Article 38.37, Section 2-a. Such hearings can be time-consuming, often requiring a trial court to consider the testimony of witnesses. A trial court could reasonably decide that it is more efficient to schedule such a hearing before trial begins in order to avoid lengthy in-court hearings while the jury waits in the jury room. And a trial court's ruling at the end of such a hearing can be just as "definitive [and] final" whether it is made before trial begins or while the jury waits.[12] *Gueder* holds that the determinative issue is whether the trial court's ruling is "definitive [and] final," and nothing in the wording of Rule 103(b) suggests that a different rule applies when the trial court's "definitive [and] final" ruling is made in a hearing held before the trial begins.

---

[12]Or the trial court could reserve its ruling until after hearing the evidence at trial, in which case it would not have rendered a "definitive, final ruling." Thus, the *Gueder* standard is easily applied regardless of whether the preliminary hearing is held before or during trial and regardless of how the trial court rules.

**V.       Conclusion**

Consequently, "a claim of error for appeal" based on an objection to evidence is preserved where it is raised in a hearing "outside the jury's presence" and where the trial court makes "a definitive final ruling" admitting the evidence, regardless of whether the hearing is held before or during trial. *Id.*; *see* TEX. R. EVID. 103(b).  Because Coleman's Rule 403 objection was made in such a hearing, and because the trial court made a "definitive final ruling" on that objection, Coleman preserved that "claim of error for appeal." *Gueder*, 115 S.W.3d at 15.

Ralph K. Burgess
Justice

Date Submitted:       December 8, 2016
Date Decided:         January 27, 2017

Do Not Publish

21