

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-21-00072-CR

---

JUSTIN CHARLES RICHARD, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 24,358-2020

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

A Wood County jury convicted Justin Charles Richard of possession of less than one gram of a controlled substance in penalty group 1, namely methamphetamine. Following a bench trial on punishment, the trial court sentenced Richard to eighteen months' confinement in state jail. Richard appeals, maintaining that (1) the trial court abused its discretion during jury selection when it denied Richard the opportunity to question individual panel members and, instead, gave an instruction to the entire panel; (2) the trial court committed reversible error when it allowed the mens rea of the offense to be charged in the disjunctive even though the indictment alleged the conjunctive; and (3) the cumulative impact of erroneous instructions requires reversal. For the reasons below, we affirm the judgment of the trial court.

## I.      Discussion

### A.      Jury Selection

Richard maintains that the trial court abused its discretion when it did not allow him to question the jury members individually about their understanding of a defendant's presumption of innocence and, instead, issued an instruction to the jury. We disagree.

It is well-established that the conduct of jury selection rests largely within the sound discretion of the trial court. *Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993). We review a trial court's decision to limit jury selection under an abuse of discretion standard. *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991). "A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry." *Sells v. State*, 121 S.W.3d 748, 755–56 (Tex. Crim. App. 2003).

During jury selection, Richard's defense counsel addressed the panel on the meaning of the presumption of innocence:

> [COUNSEL]: Here's another one. As I read this right now, I presume that my client, the defendant, Justin Richard, is innocent.
> Is there anybody who is a 3 or lower on this question?

> PANEL MEMBER: Neutral means neutral, right?

> [COUNSEL]: Neutral is just neutral.

> PANEL MEMBER: Say it again.

> [COUNSEL]: It says -- as you read this question right now, you presume that my client, Justin Richard, is innocent.
> Anybody -- anybody neutral or disagree or strongly disagree on that?
> Okay. Number 3, why is that?

> PANEL MEMBER: I don't have all the information, so --

> [COUNSEL]: Okay. So you're starting -- you're starting in the middle?

> PANEL MEMBER: (Nods.)

> [COUNSEL]: Okay. So basically what I'm getting at there is that if we were to look at scales of justice, for example, they're even. They're not tipped in Mr. Richard's favor as we sit here right now. All right.
> Who agrees -- who agrees with what I just said.

> PANEL MEMBER: That they're not tipped; they're even?

> [COUNSEL]: They're even --

> PANEL MEMBER: I don't know whether he is or isn't.

> [COUNSEL]: Exactly. They're not -- they're not tipped in Mr. Richard's favor.

> PANEL MEMBER: Yes.

> PANEL MEMBER: Innocent until proven guilty.

3

[COUNSEL]:  Everybody here agrees with me -- everybody who agrees with me, keep your cards up.

PANEL MEMBER:  Just to reiterate, you're saying we're neutral.

[COUNSEL]:  No.  What I'm saying is if -- if you're neutral, if you don't presume the scales are tipped in Justin Richard's favor --

PANEL MEMBER:  Okay.  Just straight across?

[COUNSEL]:  Straight across, 50-50.  Score is zero, zero, who agrees with that?

PANEL MEMBER:  Yes.

Thirty-eight panel members raised their hands.  Several minutes later, Richard's counsel informed the court that he believed the jury panel was confused by his questions regarding Richard's presumption of innocence.[1]  Specifically, counsel argued that the panel members understood the presumption of innocence to mean that the parties began in neutral positions.  "There has to be a presumption, which is more than neutrality, that he's an innocent man as we sit here right now."  Counsel informed the trial court that he would like to question each of the thirty-eight individual panel members to determine whether they should be stricken for cause because they did not understand the law regarding the presumption of innocence.  The court denied his request[2] and, instead, instructed the entire jury panel as follows:

---

[1]The trial court admonished counsel for referring directly to Richard's presumption of innocence during jury selection, stating, "[A]nd you're really not supposed to couch it in terms of this defendant.  It's supposed to be, is a defendant."

[2]The court informed the attorneys that, after it gave its instruction, either of them could approach the bench if they wanted to suggest additional language to include in the instruction.

4

Okay. Before the attorneys are going to exercise their peremptory strikes, I wanted to visit just briefly about something that might have been a little confusi[ng].

You probably all know that a person who is charged with a crime is presumed innocent until proven guilty beyond a reasonable doubt. And there were some questions asked of you about, are you neutral, or strongly agree, disagree.

But simply this. Is there anyone here that does not agree that a person charged is presumed innocent until proven guilty by the State beyond a reasonable doubt of each element.

Raise your hand if you don't believe that. Okay. I take it by your silence that you all believe in that premise.

The court then asked both parties if they believed the instruction was sufficient. The State answered that it did, but Richard's counsel stated, "I believe the instruction was sufficient, but I believe that their answers still give me grounds for challenging them for cause that they can't follow the law."

To the extent Richard's statement was an objection to the trial court giving the jury panel an instruction on the meaning of the presumption of innocence instead of allowing him to individually question each of the thirty-eight panel members, his objection was overruled. Richard maintains the court's ruling was reversible error. We disagree.

In support of his position that he should have been allowed to question each of the thirty-eight panel members individually, Richard directs us to *Fuller v. State*, 363 S.W.3d 583 (Tex. Crim. App. 2012). In that case, Fuller was indicted for the offense of capital murder. *Id.* at 583. The State declined to seek the death penalty, so there was no individual questioning of the panel members. *Id.* The morning jury selection was to commence, and outside the presence of the

5

panel, Fuller asked the court to allow him to ask the panel members "whether they understood that the standard of proof beyond a reasonable doubt constituted a level of confidence under the law that was higher than both the preponderance of the evidence and the clear and convincing evidence standards." *Id.* The trial court refused the request, finding that *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), disallowed such an examination during jury selection. *Fuller*, 363 S.W.3d at 584.

> On appeal, the appellate court affirmed the trial court, stating,

> In the instant case, appellant sought to explain the different burdens of proof and to elicit whether the jury understood that proof beyond a reasonable doubt is the highest burden. We conclude that such an explanation would not seek to elicit information from potential jurors, but only seek to explain the burden of proof. Only where there is a denial of a specific question that seeks to discover a juror's views on an issue applicable to the case is there an abuse of discretion. *See Smith* [*v. State*, 703 S.W.2d 641], . . . 643 [Tex. Crim. App. 1985)].[3]

*Id*. at 584–85.

In his petition for discretionary review, Fuller argued that the court of appeals had ignored contrary caselaw, and the Court of Criminal Appeals agreed. *Id.* at 585. In granting Fuller's petition, the court held that the trial court abused its discretion in denying his request to ask the jury panel about the differences in burdens of proof. The court explained that it was appropriate for Fuller to discuss with the panel members the contrast among the various standards of proof in the case, and Fuller clearly proffered a question that was at least relevant to, if not altogether dispositive of, a legitimate defensive challenge for cause. *Id.* at 589.

---

[3]*Fuller v. State*, No. 05-09-01099-CR, 2011 WL 285849, at *6 (Tex. App.—Dallas Jan. 31, 2011) (mem. op., not designated for publication), *rev'd by* 363 S.W.3d 583.

As the court noted in *Fuller*, the only circumstance in which a defendant has an absolute right to question each of the panel members individually is when he has been charged with capital murder and the State is seeking the death penalty. *Id.* at 583 (citing TEX. CODE CRIM. PROC. ANN. art. 35.17).[4] That is not the case here. Richard was charged with a drug possession offense, and the death penalty was not a potential sentence in the event he was convicted. Accordingly, he did not have an absolute right to question each of the panel members on an individual basis.

In addition, there are several differences between this case and *Fuller*. To begin with, *Fuller* addressed the issue of whether a particular question would be a proper inquiry during jury selection. In this case, there is nothing in the record to show that the trial court found, or even insinuated, that a question involving the meaning of the presumption of innocence was an improper inquiry. In fact, the trial court gave Richard's counsel ample opportunity to ask the members of the jury panel what they believed the presumption of innocence meant. Counsel even questioned some of the panel members individually. Yet, it appears from the record that it was counsel's explanations and questions that caused the resulting confusion. Moreover, when the trial court asked counsel what question he would ask the thirty-eight individuals if he were

---

[4]Article 35.17(2) states,

> In a capital felony case in which the State seeks the death penalty, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court.

TEX. CODE CRIM. PROC. ANN. art. 35.17(2).

given the opportunity, counsel's proffered explanation was almost as confounding as was his original one.[5]

A trial court has a great amount of discretion over the process of selecting jurors. *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988). "[W]ithout some sort of control by the trial judge on the voir dire examination, the voir dire examination might never end and trial might never start." *Faulder v. State*, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987). Here, instead of giving counsel an inordinate amount of time to question thirty-eight individuals about their understanding of the presumption of innocence—and possibly confusing the jury panel even further—the trial court took a relatively brief amount of time to explain the correct meaning of the term. Notably, Richard's counsel agreed that the trial court's instruction was sufficient. The trial court also informed both parties that they could proffer language to add to the instruction, but neither party chose to do so. Further, the trial court asked the panel if anyone disagreed with its explanation, and no one on the panel said that they did; nor did anyone ask the court additional questions. Instead, the panel members indicated that they understood what the presumption of innocence meant. Accordingly, any confusion resulting from the earlier questioning was alleviated by the trial court's instruction. Under this record, we cannot say that the trial court abused its discretion when it gave an instruction on the meaning of the presumption of innocence instead of allowing Richard's counsel to individually question thirty-eight panel members as to its meaning.

We overrule Richard's first point of error.

---

[5]Counsel stated, "What I would ask them is basically is that -- basically the way I put it is the scales, like I said, 50-50, is there anybody who doesn't presume that they're tipped right now in a defendant's favor."

## II.     Jury Charge Error

In his second point of error, Richard contends that the trial court erred in submitting a portion of the jury charge in the disjunctive when it was alleged in the conjunctive in the indictment.   Specifically, Richard maintains that, because the indictment charged that he "intentionally *and* knowingly" possessed methamphetamine, the trial court erred in instructing the jury to find him guilty if it found that he "intentionally *or* knowingly" possessed methamphetamine. (Emphasis added).  We disagree.

"[T]he jury is the exclusive judge of the facts, but is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13.  "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "It is not the function of the charge merely to avoid misleading or confusing the jury:  it is the function of the charge to lead and prevent confusion." *Id.*

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)).  "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal."[6]  *Id.* (quoting

---

[6]"The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error."  *Murrieta*, 578 S.W.3d at 555 (citing *Abdnor*, 871 S.W.2d at 732).  If a defendant objects to the jury charge error at trial, as was the case here, he will obtain relief if the record shows he suffered "*some* harm."  *See Almanza v. State*, 686 S.W.2d 157, 171 (1984) (op. on reh'g).

9

*Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)). At trial, Richard objected to the language in the indictment, arguing "that because the State indicted it as intentionally and knowingly, by putting the 'or,' it lessens the burden to only needing to achieve knowingly. They indicted it as intentionally and knowingly." The trial court overruled Richard's objection.

The Texas Court of Criminal Appeals has long approved the practice of pleading alternative elements of an offense conjunctively and charging the jury disjunctively, whenever the statutory language is disjunctive. *Nickerson v. State*, 782 S.W.2d 887, 891 (Tex. Crim. App. 1990). Section 481.115(a) of the Texas Health and Safety Code states, "Except as authorized by this chapter, a person commits an offense if the person knowingly *or* intentionally possesses a controlled substance listed in Penalty Group 1 or 1-B." TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Supp.) (emphasis added). Methamphetamine is a Penalty Group 1 substance. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (Supp.). Accordingly, the trial court did not err when it charged the alternative culpable mental state of the offense in the disjunctive.[7]

We overrule Richard's second point of error.

## III.   Cumulative Error

Lastly, Richard maintains that the cumulative impact of erroneous instructions from the beginning of trial to the end of trial was so great that it requires reversal. We disagree.

The Texas Court of Criminal Appeals has never ruled that "non-errors may in their cumulative effect cause error." *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim App. 2009)

---

[7]Because we find no error in the jury charge, we need not address harm.

(quoting *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999)).   Because we find no error in Richard's first and second complaints, we overrule his third point of error.

## IV.    Conclusion

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice


Date Submitted:        November 23, 2021
Date Decided:          December 7, 2021

Do Not Publish

11