

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00003-CR
_____

DUSTI KENNE LEE, Appellant

V.

STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 12F0202-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Dusti Kenne Lee admitted that she shot and killed Reggie Williams. During a pretrial conference, the State told the trial court, "I think it's pretty clear to everybody, that this is going to be a self-defense case." A jury convicted Lee of murder, and she was sentenced to seventy-five years' imprisonment. Lee argues that the trial court erred in refusing to include her requested jury charge language referencing self-defense and in submitting a jury charge on the self-defense issue "that misstated the law." While we find the submitted jury charge erroneous, we conclude that the error was not harmful to Lee. We affirm the trial court's judgment.

I.     The Jury Charge Was Erroneous

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Initially, we determine whether an error occurred and then "determine whether sufficient harm resulted from the error to require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application." *Delgado v. State*, 235 S.W.3d 244, 249

(Tex. Crim. App. 2007).  "It is not the function of the charge merely to avoid misleading or confusing the jury:  it is the function of the charge to lead and prevent confusion." *Id.*

Lee requested the inclusion of the following self-defense instructions, which substantially tracked the language used in the 2010 Texas Criminal Pattern Jury Charges for Defenses[1]:

**Presumption**

Under certain circumstances, the law creates a presumption that the defendant's belief—that the deadly force he used was immediately necessary—was reasonable.  A presumption is a conclusion the law requires you to reach if certain other facts exist.

Therefore, you must find the defendant's belief—that the deadly force she used was immediately necessary—was reasonable <u>unless you find the state has proved, beyond a reasonable doubt, at least one of the following:</u>

1.    The defendant **neither** knew **nor** had reason to believe that Reggie Williams—
   a. unlawfully and with force entered, or was attempting to enter unlawfully and with force, the defendant's occupied habitation, vehicle, or place of business or employment; or
   c. was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

2.     The defendant provoked Reggie Williams; or

3.    The defendant, at the time the deadly force was used, was engaged in criminal activity other than a class C misdemeanor that is a violation of a law or ordinance regulating traffic.

<u>If you find the state has proved element 1, 2, or 3 listed above, the presumption does not apply and you are not required to find that the defendant's belief was reasonable.</u>

Whether or not the presumption applies, <u>the state must prove, beyond a reasonable doubt, that self-defense does not apply to this case.</u>

---

[1]State Bar of Tex., *Texas Criminal Pattern Jury Charges:  Defenses* § B15.3 (2010).

3

**Application of Law to Facts**

<u>If you have found that the state has proved the offense beyond a reasonable doubt, you must next decide whether the state has proved that the defendant's conduct was not justified by self-defense.</u>

To decide the issue of self-defense, you must determine <u>whether the state has proved, beyond a reasonable doubt, one of the following:</u>

1.      The defendant did not believe his conduct was immediately necessary to protect himself against Reggie Williams's use or attempted use of unlawful deadly force; or

2.      The defendant's belief was not reasonable.

<u>You must all agree that the state has proved, beyond a reasonable doubt, either element 1 or 2 listed above.</u> You need not agree on which of these elements the state has proved.

(Emphasis added). This proposed charge correctly sets forth the State's burden of persuasion and tracks the language of Section 9.32 of the Texas Penal Code.[2]

---

[2]Section 9.32 of the Texas Penal Code, titled Deadly Force in Defense of Person, reads:

(b)      The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

(1)      knew or had reason to believe that the person against whom the force was used:
(A)      unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
(B)      unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
(C)      was committing or attempting to commit an offense described by Subsection (a)(2)(B);

(2)      did not provoke the person against whom the force was used; and

(3)      was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

4

The charge submitted to the jury on the self-defense issue removed the underlined language related to the State's burden of persuasion and stated instead:

The defendant's belief that deadly force was immediately necessary **is presumed to be reasonable if:**

The defendant **neither** knew **nor** had reason to believe that Reggie Williams

1.    unlawfully and with force entered, or was attempting to enter unlawfully and with force, the defendant's occupied habitation, vehicle, or place of business or employment; or

   a.    was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

2.    The defendant provoked Reggie Williams; or

3.    The defendant, at the time the deadly force was used, was engaged in criminal activity other than a class C misdemeanor that is a violation of a law or ordinance regulating traffic.

(Emphasis added).

Texas law allows a person to use deadly force if he reasonably believes such force is immediately necessary to protect himself from the other person's use of deadly force. TEX. PENAL CODE ANN. § 9.32. Many murder cases revolve around whether the actor was reasonable in that belief when causing a death. The jury is instructed that the defendant's action is

---

(c)    A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

(d)    For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

TEX. PENAL CODE ANN. §  9.32 (West 2011).

presumed to be reasonable when certain conditions are met. In recent years, the Legislature has made a change in this instruction, which apparently was intended to provide more protection to persons in their own homes. The general notion is that an individual who is protecting herself or her family from an intruder is presumed to have acted reasonably in the use of deadly force if the intruder is attempting to enter the individual's habitation or commit certain other specific crimes. Here, the instruction given to the jury completely reversed the legal requirement and instructed that even if Lee *neither* knew *nor* had reason to believe that Williams was trying to enter her home, her action in shooting Williams was presumptively reasonable. Essentially, this would have allowed the jury to find Lee was presumptively reasonable in killing Williams even if Williams was lawfully on the property and was not attempting to commit a crime. That is not the law. But in this case, in spite of the erroneous instructions on self-defense, the jury found Lee guilty.

Self-defense is not an affirmative defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The defendant only has the burden of producing evidence that raises self-defense; the State still has the "burden of persuasion to disprove the raised defense." *Id.* "The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt." *Id.*; *see Muhammad v. State*, 911 S.W.2d 823, 828 (Tex. App.—Texarkana 1995, no pet.). The Texas Criminal Pattern Jury Charges for Defenses includes language referring to the State's burden of persuasion. State Bar of Tex., *Texas Criminal Pattern Jury Charges: Defenses §B15.3 (2010).*

6

Other instructions in the trial court's charge correctly reference the State's ultimate burden of production in its case-in-chief and the burden of persuasion with respect to self-defense.[3] Thus, Lee does not complain about the exclusion of the burden of persuasion language from the excerpts referenced above. Instead, Lee argues, "The way this jury charge reads, Dusti's use of deadly force is presumed reasonable if she knew Reggie *lawfully* entered her house or if she *did not* know Reggie was committing or about to commit one of the crimes outlined in (a)." Lee is correct. The trial court's charge in this case instructed the jury, in relevant part, that Lee was entitled to the presumption of reasonableness if (1) Lee neither knew nor had reason to believe that Williams was unlawfully and forcibly entering or attempting to enter her home, (2) Lee neither knew nor had reason to believe that she provoked Williams, or (3) Lee neither knew nor had reason to believe that she was engaged in criminal activity other than a traffic violation at the time the deadly force was used. Here, the State acknowledge[d] that as a result of typographical errors, the jury charge did not properly track the language of Texas Penal Code Section 9.32.[4] We agree the charge was erroneous, but not as a result of typographical errors.

## II.    The Jury–Charge Error Claim Was Preserved

Although the State concedes error in the jury charge, it argues that the error was not raised before the trial court. The level of harm that must be shown as having resulted from the

---

[3]The court instructed, "The burden of proof is upon the State and never shifts to the Defendant throughout the course of the trial."

[4]The State suggested that the instruction could be corrected by replacing the word "if" with the word "unless." However, this modification does not correct the inappropriate use of the phrase "[t]he defendant neither knew nor had reason to believe that Reggie Williams" to modify Lee's entitlement to the presumption of reasonableness in Sections 9.32(b)(2) and (3).

erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. When a proper objection is made at trial, reversal is required if there is "some harm" "calculated to injure the rights of defendant." *Id.*; *see Almanza*, 686 S.W.2d at 171. But, when the defendant fails to object to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743–44 (citing *Almanza*, 686 S.W.2d at 171); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). In determining whether the error caused egregious harm, we must decide whether the error created such harm that the appellant did not have a "fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *see Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171; *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.). "Neither the State nor the defendant has a burden to prove harm." *Reeves v. State*, No. PD-1171-12, 2013 WL 5221142, at *2 (Tex. Crim. App. Sept. 18, 2013).

In order to preserve error relating to a jury charge, there must either be an objection or a requested charge. *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). Texas Rule of Appellate Procedure 33.1 requires that a complaint be made "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). "No talismanic words are needed to preserve error as long as the court can understand from the context what the complaint is." *Clark v. State*, 365 S.W.3d 333, 337 (Tex. Crim. App. 2012).

8

Lee complained of the "omission of certain parts on Page 6 of the defense's proposed charge." This page included Lee's proposed charge on the issue of self-defense, which included the State's burden of persuasion. The trial court explained:

> THE COURT: . . . I think specifically the part that I thought was extremely confusing . . . was the part that basically reads, therefore, you must find the defendant's belief that the deadly force she used was immediately necessary, and this was the part I didn't like, was reasonable unless you find the State has proved beyond a reasonable doubt at least one of the following: And then it goes into basically three things the State, I think, must show. That part is all in the charge that the State's prepared. The only part that I think I've left out, or I ordered to be left out, was that was reasonable unless you find the State has proved beyond a reasonable doubt. And, [Mr. Williams], it was my opinion that Page 7 or 8 of the charge the State submitted pretty well took care of that in much simpler language. Was that not what you and I discussed?

> [Defense Attorney]: Yes, Your Honor.

> THE COURT: Pretty much, I mean --

> [Defense Attorney]: That was our discussion and just --

> THE COURT: And you still objected to it, I understand that.

> [Defense Attorney]: Yes, Your Honor. And just for record purposes, the charge that the defense submitted tracks the State Bar's pattern jury charges on defenses almost word for word, except where you have to fill in the specific applicability to this case or the facts in this case. It's from the 2011 pattern jury charge book on defenses from the State Bar of Texas.

> THE COURT: Yes. You showed me that. I'm aware of that. Again, I just think it's way too confusing. I thought the language that the State included in there took care of that, maybe in two different places in the charge, but I thought it was much more simple put. And it, in my opinion, allowed the jury to reach the same conclusion that she was acting in self-defense.

Lee argued that the trial court's charge contained "omissions of certain parts." Although she failed to specify what the omissions were, the trial court understood that the complaint was

9

related to the State's burden of persuasion.  The State concedes as much but maintains that Lee's "objection [at trial] was not that the charge misstated the law."  Because the complaint was that "the presumption related to the use of deadly force had been omitted from the charge," the State argues that Lee cannot raise a point of error on the "misstatement of the law."

However, the court also noted that the proposed charge "goes into basically three things the State, I think, must show," and believed "[t]hat part is all in the charge that the State's prepared. . . . in much simpler language."  The "three things" referenced by the court were the misstatements of law regarding situations which would entitle Lee to the presumption of reasonableness.  The court referenced an unrecorded bench conference in which Lee "still objected" to the court's charge despite the judge's discussion that "the charge the State submitted pretty well took care of" the presumption of reasonableness instruction "in much simpler language." Thus, it appears that the trial court specifically included the misstatements complained of after noting Lee's disagreement with its wording.

Although the statute governing the preservation of jury-charge error specifies that "in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error," Lee submitted the requested charges which contained the correct language referencing the presumption of reasonableness.  TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).  We conclude that error has been preserved.

10

**III.    No Actual Harm Resulted From the Jury Charge Error**

As we have previously stated, "The harm caused by the error must be considered 'in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Kihega v. State*, 392 S.W.3d 828, 835 (Tex. App.—Texarkana 2013, no pet.) (quoting *Almanza*, 686 S.W.2d at 171); (citing TEX. CODE CRIM. PROC. ANN. art. 36.19).  Additionally, Lee must have suffered actual harm, not merely theoretical harm. *Id.*

**A.    The Jury Charge**

We first look to the court's jury charge.  The charge allowed the jury to presume that Lee acted reasonably even if she knew or had reason to believe that Williams was lawfully entering her home and was not committing or attempting to commit a crime.  This written instruction was corrected when the court read the charge to the jury, which tracked Section 9.32 of the Texas Penal Code:

> The defendant's belief that deadly force was immediately necessary is presumed to be reasonable if the defendant knew or had reason to believe that Reggie Williams, one, unlawfully and with force entered or was attempting to enter unlawfully and with force the defendant's occupied habitation, vehicle, or place of business or employment, or, A, was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Moreover, the written instruction increased, rather than lessened, the State's burden of persuasion.

11

In order for the presumption of reasonableness to apply, the Texas Penal Code requires a finding that the actor did not provoke the victim *and* was not involved in criminal activity described in Section 9.32(b)(3). *See* TEX. PENAL CODE ANN. § 9.32(b)(3). The court's charge, however, only required the jury to find that *Lee did not believe* she provoked the victim *or* did not believe she was engaged in criminal activity.[5] The court's instructions made the self-defense justification more attainable for Lee.[6] Thus, the misstatements of the law that Lee complains of actually favored her at trial and cannot be seen as harmful.

The jury charge also contained the following proper language, mitigating the error caused by the erroneous submission:

> A person who has a right to be present at a location where the person uses deadly force against another is not required to retreat before using deadly force in self-defense if both:
>
> 1. the person with the right to be present did not provoke the person against whom the deadly force is used; and
>
> 2. the person is not engaged in criminal activity at the time the deadly force is used.
>
> . . . .
>
> When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is

---

[5]Lee argues,

> The way the trial court read the charge is a misstatement of the law because the jury was permitted to find that [Lee's] actions were presumed reasonable if she knew or had reason to believe that Reggie Williams . . . (2) the defendant provoked Reggie Williams, or (3) the defendant at the time the deadly force was used was engaged in criminal activity other than a Class C misdemeanor that is a violation of the law or ordinance regulating traffic. This is incorrect, confusing, and a misstatement of the law.

[6]The jury was only required to make a finding on provocation or criminal activity based on weighing Lee's belief as to whether she engaged in conduct that would remove the presumption of reasonableness.

12

created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack.

. . . .

Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, DUSTI LEE, did commit the offense of murder, as alleged in the indictment, but you further find from the evidence, as viewed from the standpoint of the defendant at the time that from the words or conduct, or both, of Reggie Williams it reasonably appeared to the defendant that her life or person was in danger and there was created in her mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Reggie Williams, and that acting under such apprehension and reasonably believing that the use of deadly force on [her] part was immediately necessary to protect herself against Reggie Williams's use or attempted use of unlawful deadly force, she shot Reggie Williams with a gun, or if you have a reasonable doubt thereof, then you should acquit the defendant on the grounds of self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of the doubt and say by your verdict not guilty.[7]

When considered as a whole, we find that the jury charge, while erroneous, was not harmful to the defendant, and the errors in the charge resulted in a more favorable jury charge for the defendant.

### B.    The State of the Evidence

The evidence as to whether Lee shot Williams to protect herself was contested.  Lee testified that she shot Williams in self-defense.  The statements of an eyewitness and an inmate supported this defense.  Two other eyewitnesses and five inmates testified that Lee did not shoot

---

[7]"The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case.  We look at the wording of the application paragraph to determine whether the jury was correctly instructed in accordance with the indictment and also what the jury likely relied upon in arriving at its verdict, which can help resolve a harm analysis." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).

Williams in self-defense.  However, all of the eyewitness testified that Lee was their drug dealer, removing her entitlement to the presumption of reasonableness.[8]

Lee testified that Williams, who likely purchased drugs from a former roommate, visited the home at a time when she was entertaining Roberts, Porsha Jones, and Ronnie Humble.  Lee claimed that Williams, who "had a problem with" Jones and Roberts, "was being real loud and demanding me to run [Roberts and Jones] off."  Williams was "trying to get $50 . . . to get his wife out of jail."  Lee denied Williams the money and refused to ask her company to leave, causing Williams to "get madder and madder."  She advised Williams, "[T]he best thing for you to do, is to leave and not ever come back, because if you're going to come here with this type of attitude, I don't need this type of attitude here."  Lee pointed to a "no trespassing" sign affixed to her mailbox and told Williams he would be trespassing if he returned.

Lee testified that after this encounter, "everybody left," and she began cleaning her home.  While cleaning, Lee heard her door open, picked up her gun because she was startled, saw Williams "coming in . . . walking rather fast," and "confronted him as to why."  Lee testified, "[I] demanded to know why he was back there because I had told him to leave and to not return."  Lee testified that Williams was "hitting his chest and throwing his arms out and telling me he couldn't believe that I was acting this way towards him."  She asked Williams to leave "two to three times at least."  According to Lee, when Williams saw her gun, he said that "he'd be back the next day with his [gun]."  Lee testified, "As far as him coming towards me . . . to taking an

_____
[8]Mary Denton, the victim's sister-in-law, testified that Williams went to Lee's house to buy drugs for Denton.  Jason Roberts testified that he and Lee were both "doing methampethamines that day."

actual step, I can't 100 percent say for sure he was taking a step, but my perception he was coming to me." However, she then said, "[H]e lunged, and I actually had pulled the trigger."

Jones testified that she witnessed the shooting. She explained that she was in Lee's home along with Roberts and Humble because Lee was their methamphetamine dealer. Jones corroborated the argument between Lee and Williams during the first encounter but stated the argument ensued when Lee refused to give Williams drugs on credit. She said, "Hours later, [Williams] called asking if he can come back, and [Lee] said yeah." According to Jones, Williams was returning in hopes of exchanging a ring for Lee's drugs. Jones testified that Lee shot Williams while the two were "just talking, conversation." Jones said there was no yelling, screaming, lunging, or other aggressive behavior being exhibited by Williams. Lee "kind of just walked to the, you know, outside her door and peeked her head in the living room and was like, you know, come look at all this blood." Jones said the shooting did not "bother" Lee. Before Jones left, Lee asked her to falsely confirm a story of self-defense if asked.

Roberts corroborated Jones' version of events, adding that Lee informed Roberts that Williams would not be leaving Lee's home. Roberts understood this statement to mean that Lee was going to kill Williams. While the two were having a conversation, Roberts testified that while Lee and Williams were having a conversation, Lee said, "[Williams], I told you not to come back." Roberts continued "[T[hat's when she drew the gun. And then [Jones] put her head in my, you know, in my side, and then [Lee] fired one shot." According to Roberts, Williams asked them to "help him" before he "hit the wall and the chair and then ran through her bedroom door." Roberts testified that Lee was "just laughing, walking back and forth laughing, talking

15

about the blood that was running from under the door. And then she said she was going to let him bleed out before she called the police." Roberts heard Lee ask Jones "if she would say that he tried to jump on her so it would be . . . self-defense."

Humble testified that Williams and Lee "got into it a little bit, and he turned around and kind of lunged at her a little bit. And then that's when she shot him." Although this aided Lee's defense, Humble testified that Lee gave him drugs in exchange for a ride in his vehicle.

The jury next heard from a series of inmates who testified about statements made by Lee during her pretrial incarceration. Inmate Kenyetta Nicole James testified that Lee "was bragging about how she killed . . . a bastard" and "just left him for dead." James said that Lee "was glad she killed him" and did not appear to be upset. Inmate Jennifer Lemmen testified that Lee "said that she had shot the nigger and that the mother f***er had to go in her room and die and that he said that he was going to get his piece, his gun, and that he would be back. And so [Lee] said that she got her piece, her gun, and that she waited for him." Lee told Lemmen that she murdered Williams and that she was going to get away with it.

The remaining inmate witnesses, Kimberley Minniefield, Jacqueline Fagan, Donna Rae Harris, and Kathy Hamilton, also reported similar statements made by Lee. Each inmate witness, except for Hamilton, testified that Lee never claimed she shot Williams in self-defense. Hamilton testified, "I'm going to be honest with you. She said he came towards her. She kept telling him to get out, and, you know, he came back or something." Fagan testified that Lee believed Williams "deserved to die" because Lee thought he was stealing from her and "was trying to play her."

16

Although a few witnesses supported the self-defense theory, all of the eyewitnesses to the shooting claimed that Lee was actively distributing drugs that day; thus, she would not be entitled to the presumption of reasonableness. The strength of the evidence weighs against a finding of some harm.

## C.      Arguments of counsel

Lee's counsel set forth the correct law during his voir dire of the prospective jurors.  The misstatement in the jury charge was also corrected by Lee's counsel when he argued,

The law allows us to defend ourselves in our own home to a greater extent than it allows us to defend ourselves anywhere else.  They have to disprove that. They have to prove to you beyond a reasonable doubt that she was not allowed to be there, that she wasn't present lawfully.  They have to prove to you beyond a reasonable doubt that he didn't enter that home unlawfully with force. . . .  He entered that home unlawfully.  He knew he didn't have the right to be there.  Even their witnesses, that's the part we all agree on, is that they were there at one point in time, and they heard her say, never come back, you'll be trespassing.  That is without question in this trial.  The law presumes, the law presumes that she acted reasonably.  You don't -- the law takes it out of your hands.  The law tells you that unless they prove she wasn't there lawfully, and she didn't -- she wasn't there lawfully, and she was engaged, and they can't prove -- they have to prove that she was engaged in criminal activity at the time the force was used.  If they don't prove to you beyond a reasonable doubt either one of those two things, it takes it out of your hands.  The law tells you, you're supposed to presume that she acted reasonably.  You don't have to even determine if it was reasonable.  All you have to determine is did they prove to me that she wasn't in her home lawfully, did they prove to me beyond a reasonable doubt that he was there lawfully.  They have to prove to you that he was there lawfully and that he didn't enter that home unlawfully with force.  Then they have to prove to you beyond a reasonable doubt that she was involved in criminal activity at the time the force was used.  They can't do that.  There was no evidence she was involved in any criminal activity.  The police found nothing.  She signed a consent to search.  They didn't find anything.  They didn't find anything.  So it's out of your hands, ladies and gentlemen.  She is presumed reasonable.  The law allows us to do that.  The law allows each and every citizen of the great State of Texas to be able to defend ourselves in our own home and doesn't let anybody second-guess them unless the State can prove beyond a reasonable doubt, beyond a reasonable doubt those things I just told you about.  And they're not going to be able to do this in this case.

17

The misstatements of law in the jury charge were corrected during voir dire and clarified in closing argument. The arguments of counsel weigh against a finding of harm.

After reviewing the entire jury charge, the state of the evidence—including the contested issues and the weight of the probative evidence; the arguments of counsel, and other relevant information, we conclude that the record fails to demonstrate any harm calculated to injure Lee's rights. Lee's point of error is overruled.

## IV. Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:     November 4, 2013
Date Decided:       November 22, 2013

Publish

18