**Opinion Issued December 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00140-CR

————————————

**DAMIEN DOUGLAS HARRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 428th District Court**
**Hays County, Texas**
**Trial Court Case No. CR-17-0781-D**

---

## DISSENTING OPINION

The presumption of reasonableness instruction that the trial court included in the jury charge accurately states the law that applies when there is an evidentiary dispute on whether a defendant was engaged in criminal activity when the defendant used self-defense in killing another person. Had there been an evidentiary dispute in

this case over whether appellant Damien Douglas Harris was engaged in criminal activity—namely, an illegal drug transaction—when he shot the complainant Terrance Valentine, then the trial court would not have erred by including the instruction and by refusing to give any clarifying instructions in response to the jury's note.

But there was no such evidentiary dispute in this case. Much the opposite, the record reveals undisputed evidence that Harris was engaged in criminal activity at the time of the shooting. At trial, the prosecution presented extensive and compelling evidence that Harris went to Ty-Zay Wilson's apartment to sell Valentine bottles of illegal, prescription-grade cough syrup. Defense counsel put on no contrary evidence whatsoever, and even offered to stipulate that the bottles in question contained illegal drugs.

It is well settled that only *evidence*—not attorney argument—can put an issue in dispute. The majority therefore errs by concluding that a defense attorney's vague closing-argument statement about an inadequate investigation created a dispute over whether the defendant was engaged in criminal activity at the time that the shooting occurred. To the contrary, Harris did not dispute in the jury's presence that he was engaged in illegal activity.

Because the evidence was undisputed that Harris was engaged in an illegal drug transaction, the trial court erred by instructing the jury on the presumption of

2

reasonableness over defense counsel's objection. Every court to consider the issue has held that when the defendant's engagement in criminal activity is undisputed, the presumption of reasonableness is not applicable law. The trial court therefore erred by including this inapplicable law in its charge. The court then compounded its error by refusing to answer the jury's question with a clarifying instruction to eliminate the harm caused by including inapplicable law in the charge. Because Texas Court of Criminal Appeals precedent requires a new trial in these circumstances, I respectfully dissent.

## I.      The Presumption of Reasonableness

The first step in analyzing a claim of jury charge error is to "determine whether the jury instruction is erroneous." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Hopkins v. State*, 615 S.W.3d 530, 548 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) ("We review an alleged jury charge error regardless of preservation.").

Under Texas law, the trial court bears the responsibility to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14; *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). Indeed, "[t]he trial judge has the duty to instruct the jury on the law

applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge." *Id.* at 519. A trial court's substantive response to a question from the jury "essentially amounts to a supplemental jury instruction" and is therefore governed by the "same rules" that "generally govern jury instructions." *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011). "Because a trial court's answer to a jury's question must comply with the same rules that govern charges," the trial court, "as a general rule, must limit its answer to setting forth the law applicable to the case." *Id.*

Here, Harris asserted the defense of self-defense. A person is justified in using deadly force against another if, among other things, the person "reasonably believes the deadly force is immediately necessary" to protect against another's unlawful use of deadly force or to prevent the commission of certain enumerated criminal offenses, including murder, robbery, or aggravated robbery. TEX. PENAL CODE § 9.32(a). The actor's belief that deadly force was immediately necessary under section 9.32(a) is presumed to be reasonable under certain circumstances, including when the actor was not engaged in criminal activity other than certain minor traffic-related offenses. *Id.* § 9.32(b)(3).

The crux of this appeal is whether the presumption of reasonableness instruction was law that was "applicable to the case." That question turns on whether it was conclusively established that Harris was engaged in criminal activity at the

4

time of the shooting. Under Texas law, when the "evidence conclusively establishe[s] that [the defendant] was engaged in criminal activity at the time he used deadly force," the presumption of reasonableness instruction is "not the law applicable to the case." *Reyna v. State*, 597 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Lee v. State*, 415 S.W.3d 915, 925 (Tex. App.—Texarkana 2013, pet. ref'd) ("Although a few witnesses supported the self-defense theory, all of the eyewitnesses to the shooting claimed that Lee was actively distributing drugs that day; thus, she would not be entitled to the presumption of reasonableness.").

## II. The Undisputed Evidence Establishes that Harris Was Engaged in Criminal Activity at the Time of the Shooting

The majority concludes that the trial court did not err by giving the presumption of reasonableness instruction because "it was not undisputed that appellant was engaged in criminal activity at the time of the shooting." The majority cites two grounds for this conclusion. First, the majority reasons that "neither witness involved in the alleged drug transaction could say what was in the bottles, and the alleged drugs were never found or tested." Second, the majority cites arguments made by defense counsel in opening and closing statements as proof of a "disputed" issue.

I disagree on both counts. To begin, the record reveals undisputed witness testimony that Harris was engaged in criminal activity—namely, possession with

5

intent to distribute a controlled substance—at the time of the shooting. Joseph Massey, Valentine's friend, testified that he went with Valentine to Wilson's apartment and learned on the way that they were going to buy "lean," which he knew was promethazine with codeine. They arrived at Wilson's apartment and waited on Harris to arrive to sell the drugs. After Harris arrived with a single box, Harris and Valentine talked about "[t]he buying and selling of the drugs." Massey looked inside the box when it was opened and recognized its contents as bottles of "[p]harmaceutical grade promethazine codeine," or "lean."

That is not all. Wilson, who lived at the apartment and facilitated the drug deal, testified that Harris brought a cardboard box to his apartment. Wilson looked inside the box, and he testified that it contained "[t]he bottles. The promethazine bottles."

Finally, Brady Templeton, a San Marcos Police Department investigator, testified that investigators suspected or learned that a drug deal had occurred at the apartment "at least in part for promethazine, which is a prescription[-]only cough syrup that comes in bottles." All of this testimony is evidence that Harris was engaged in illegal drug activity at the time that the shooting occurred.

Because there is no contrary evidence that the bottles contained anything other than illegal cough syrup, the evidence was undisputed that Harris was engaged in criminal activity at the time of the shooting. The majority's reliance on counsel's

6

opening and closing statements does not raise an evidentiary dispute that would justify an instruction on the presumption of reasonableness. It is well settled that an attorney's arguments, specifically those made during opening and closing statements, are not evidence. *See Cary v. State*, 507 S.W.3d 750, 755 (Tex. Crim. App. 2016) (stating that "arguments of the parties and their trial theories are not evidence"); *Torres v. State*, 371 S.W.3d 317, 320 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("Questions or statements of counsel not under oath do not constitute evidence.") (quoting *Delgado v. State*, 544 S.W.2d 929, 931 (Tex. Crim. App. 1977)).

I also disagree with the majority's characterization of the opening and closing arguments by defense counsel as disputing that Harris was involved in criminal activity at the time of the shooting. First, the majority states that defense counsel argued during opening statements that there was "no evidence" that Harris was "a part of the negotiations" or "in control" of the drugs, which had "never been tested." The majority concludes that this is a suggestion by defense counsel that a controlled substance was never brought to Wilson's apartment. However, these statements were not made during Harris's opening statement to the jury. Rather, defense counsel made these arguments during a pretrial hearing prior to voir dire, outside the presence of any jury or venire panel. In closing arguments, when challenging the witnesses' credibility and the "kind of investigation" conducted by law enforcement

officers, defense counsel appeared to be referring to a witness's alleged false statements to law enforcement officers and the presumption of innocence. The record gives no indication that the vague reference to the "kind of investigation" conducted concerned whether the bottles contained promethazine with codeine.

In short, during opening and closing statements, defense counsel never disputed that Harris was involved in criminal activity when he shot Valentine. Much the opposite, during opening statements, defense counsel argued that Harris "walked right into a trap" during a "drug deal." When Harris figured out it was a trap, he "tried to get the box and walk out the door," when he was stopped by Valentine who tried to shoot Harris first. Similarly, during closing, defense counsel argued that Harris went to Wilson's apartment for a "drug deal"; Valentine handed over counterfeit money for the drug "transaction"; and then "the box [was] gathered up, the bottles [were] gathered up, and Mr. Harris back[ed] out of this" before running into Valentine and shooting him. Defense counsel repeatedly referenced the drug deal that brought Harris and Valentine together at that apartment. Thus, I disagree with the majority that defense counsel disputed that Harris was engaged in criminal activity at the time of the shooting.

This case is analogous to *Lee v. State*, in which the Texarkana Court of Appeals determined that a defendant was not entitled to the presumption of reasonableness. *See* 415 S.W.3d at 925. There, the defendant and a few witnesses

8

testified at trial that the defendant shot the complainant in self-defense, but many other witnesses testified that the shooting was not in self-defense. *Id.* at 923. All of the witnesses, however, testified that the defendant was their drug dealer and was actively selling drugs from her house where she shot the complainant that day. *Id.* at 923–25. Because the defendant was actively engaged in the selling of drugs when she shot the complainant, the court held that she was not entitled to the presumption of reasonableness. *Id.* at 925. In reaching its holding, the court did not say whether any drugs had been found at the house or tested by authorities. *Id.* at 923–25.

Similarly here, Massey and Wilson—the only two witnesses to Valentine's shooting who testified at trial—testified that Harris was engaged in selling bottles of pharmaceutical-grade cough syrup when Valentine was killed. Thus, Harris was not entitled to the presumption of reasonableness.

The trial court therefore erred by including the presumption of reasonableness instruction in the jury charge. "When it comes to jury instructions, trial courts are required to instruct the jury on the law applicable to the case." *Williams v. State*, — S.W.3d —, No. PD-0477-19, 2021 WL 2132167, at *5 (Tex. Crim. App. May 26, 2021) (internal quotation marks omitted); *see Delgado v. State,* 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) ("The trial judge has an absolute *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged."). The presumption of reasonableness did not apply to the case, given the

9

undisputed evidence that Harris was engaged in an illegal drug deal at the time of the shooting.

## III. Preservation of Error and Demonstration of Harm

"[I]f a defendant complains on appeal about an erroneous instruction (or lack of a proper instruction) regarding an area of the law that is considered the law applicable to the case, the objection (or lack thereof) determines the applicable standard for assessing harm." *Williams*, 2021 WL 2132167, at *5. "If a proper objection was made at trial to an error in the jury charge, reviewing courts determine whether the error caused the defendant some harm." *Id*.

The record reflects that defense counsel preserved error by objecting to the erroneous inclusion of the presumption of reasonableness in the trial court's jury charge, receiving a ruling on his objection, and requesting a curative instruction in response to the note that the jury submitted to the court during deliberations. *See* TEX. R. APP. P. 33.1(a).

During voir dire, the State insisted upon including the presumption in the jury charge over the defense's objection:

> State: Okay. The law additionally states that reasonable belief is presumed if a person whose force was used against was attempting to commit a burglary, kidnapping, sexual assault, robbery or murder; or the person using force to not provoke the person whose force was used against; or the person using force was not engaging in any criminal activity. If any one of those things is proven false, in other words, if there was criminal activity, or the person

10

claiming self-defense did provoke it, or the person whose self-defense was used against was not engaged in those listed crimes, that belief is not presumed reasonable and you've got to evaluate it on its own merits.

If any of those things are proven false, why do you think, Ms. Bell [a venireperson], it should be more difficult to claim self-defense in that you had a reasonable belief—

Court:       Counsel approach.

Defense:     At this time may we approach?

(At the Bench)

Court:       Is this the issue you were talking about before? What's your specific objection?

Defense:     We're objecting—*we're stipulating that he doesn't get the presumption, so it's a misuse of the law.* The Constitution is to protect the Defendant, so he's misusing the presumption. It's a right for the accused and not the State to use in the adverse against him. He's basically using his Constitutional rights against him.

State:       And, Your Honor, we're at the very beginning stages. All I'm talking about is the law generally. I'm not talking about the specific facts. There is no evidentiary stipulation on record at this point. I don't think there can be. So I think I'm still entitled to talk about the law generally, which is what I'm doing.

Defense:     Your Honor, if I may? The Defendant is the only one that can waive the right. *We are waiving his right to the presumption of reasonableness. I'm saying that on the record. I've stipulated to the record.* There's no reason for us to discuss this.

Court:       I'm going to overrule the objection, *but I'm going to give them an instruction related to evidence and the law.* And the Defense's objection is noted.

(Emphasis added.)

11

The State continued by explaining to the venire panel that it would be "harder" for someone to prove self-defense if that person was engaged in criminal activity at the time of a shooting, a questionable statement that was challenged by the defense:

State:       Ms. Bell, I think I left off with you. Why might the legislature have decided—the legislature decided that it should be harder to claim self-defense if I'm engaged in criminal activity? What do you think was going on there?

Defense:     I'm going to object, Your Honor, as to a misstatement of the law. It's not harder to prove self-defense.

State:       Well, it is in the sense that you don't get the presumption of reasonableness.

Court:       Sustained.

Harm from the erroneous instruction is evident in the question sent by the jury during deliberations: "Does the admitted commission of a crime, sale of a controlled substance, negate the basis of a claim of self-defense[?]" This question reveals that the jury focused on the presumption of reasonableness instruction—which was not applicable law—and struggled with how to apply it to the case at hand.

This is precisely the result intended by the State when it requested an inapplicable instruction to make it "harder" for Harris to prove self-defense. This is also precisely the result that defense counsel sought to avoid by objecting to discussion and application of the presumption. A simple one-word instruction— "no"—in response to the jury's question would have eliminated the confusion, and Harris requested as much. The trial court's failure to give this clarifying instruction

12

harmed Harris. In these circumstances, Harris is entitled to a new trial. *See Arteaga*, 521 S.W.3d at 340 ("The normative remedy for harmful jury charge error is to reverse the convictions and remand for a new trial."). Therefore, I respectfully dissent.

April L. Farris
Justice

Panel consisted of Chief Justice Radack and Justices Goodman and Farris.

En banc reconsideration was requested. TEX. R. APP. P. 49.7.

A majority of the justice of the Court voted in favor of reconsidering the case en banc.

The en banc court consists of Chief Justice Radack and Justices Kelly, Goodman, Landau, Hightower, Countiss, Rivas-Molloy, Guerra, and Farris.

Chief Justice Radack, writing for the majority of the en banc court, joined by Justices Kelly, Landau, Hightower, Countiss, Rivas-Molloy, and Guerra.

Justice Goodman, dissenting.

Justice Farris, dissenting.

Publish. TEX. R. APP. P. 47.2(b).