

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00164-CR

BOBBY CARL LENNOX AKA BOBBY CARL LEANOX, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28256

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion on Remand by Chief Justice Stevens

MEMORANDUM OPINION ON REMAND

Following a jury trial, Bobby Carl Lennox a/k/a Bobby Carl Leanox was found guilty of three counts of forgery of a financial instrument. *See* TEX. PENAL CODE ANN. § 12.425, § 32.21 (Supp.). After finding two enhancement paragraphs to be true, the trial court sentenced Lennox to seventeen years' confinement in prison on each count, with the sentences to run concurrently. Lennox appeals, maintaining that Section 32.21(e-1)(2) of the Texas Penal Code applied to his three convictions, and not Section 32.21(d), as alleged by the State. Lennox argues that (1) the guilt/innocence charge contained error that resulted in three state-jail-felony convictions instead of three class B misdemeanor convictions and (2) the punishment charge contained error that resulted in three sentences of seventeen years' confinement, which exceeded the applicable punishment range for the offenses of which he was, in fact, convicted. The State contends that Lennox failed to preserve his complaint for appellate review.

This case is now before us on remand following the decision of the Texas Court of Criminal Appeals in this case and another case, which was consolidated with this one, dealing with the same subject matter. *See State v. Green*, 682 S.W.3d 253, 278–79 (Tex. Crim. App. 2024). Based on that decision, we find that the guilt/innocence charge contained error and that Lennox is entitled to modification of the judgments to show that he was convicted of three class B misdemeanor offenses in violation of Section 32.21(e-1)(2). *See* TEX. PENAL CODE ANN. § 32.21(e-1)(2). Furthermore, we find that the trial court's punishment charge contained error.

2

Accordingly, we reverse the judgments as to punishment and remand this case to the trial court for a new trial on punishment.

## I.    Factual Background

After James Maurice McKnight died in 2018, his daughter, Fran King, closed McKnight's bank account at Guaranty Bank. Later, in December 2018, King asked Frank Norwood to have his auction company organize a sale of McKnight's estate. Among other individuals, Brandon Crawford, Destiny Brush, and Janae Lewis helped Norwood with the estate sale. Before the sale, King's family placed some items, including a checkbook, in a "safe room" in McKnight's home so that the items would not be sold. The evidence demonstrated Lewis's awareness that those items had been placed in the "safe room." The estate sale was conducted December 29, 2018.

Crawford testified that he and Lennox were "pretty good friends" and that he had worked with Lennox "a couple of times." Crawford also testified that Lennox admitted to him that he received the checks from the estate sale from Lewis, "from the dead guy," and to having passed the checks.

In January 2019, Nima Sherpa (Nima) was the manager of the Quick Track convenience store in Paris, Texas. Nima testified that she knew Lennox because he regularly came into the store and that Lennox often brought checks to the store to cash. According to Nima, in January 2019, Lennox "passed" the checks in the store that had been dated January 7, January 9, and January 12, 2019. The three checks were from McKnight's bank account and had been made payable to Bobby Lennox. Nima said that, because Lennox was a regular customer, she did not

3

ask him to endorse the checks or to pay the normal check-cashing fee. Nima later learned that the bank "rejected" the three checks for insufficient funds.

Gyalbu Sherpa (Gyalbu), also a manager at Quick Track, stated that he knew Lennox because Lennox sometimes did "small jobs" for Quick Track stores. Gyalbu explained that, after Lennox cashed the checks and Gyalbu realized there were insufficient funds in the account, Gyalbu asked Lennox, "I said your checks are bad, why do you pass those checks?" Lennox responded that "[he] worked for somebody and those [were the employer's] checks." According to Gyalbu, Lennox claimed not to have known that the checks were "bad."

King stated that, after she closed her father's account at Guaranty Bank, she received a telephone call from an employee of the bank informing her that one of her father's bank account checks had gone "through" the bank. King said she reported the incident to law enforcement. She stated that she did not write the check and had never written any check to Lennox. King also said that, as far as she was aware, her father had not known Lennox or hired him to do any work.

Following a jury trial, Lennox was found guilty of all three counts, which alleged Section 32.21(d) offenses. After the trial court found both enhancement paragraphs to be true, Lennox was sentenced to seventeen years' confinement in prison on each count, with the sentences to run concurrently. This appeal followed.

## II. Discussion

Lennox argues that the trial court's guilt/innocence jury charge and its punishment charge contained errors that caused him egregious harm. Specifically, Lennox complains that the trial court's charges did not contain any instructions relating to a violation of Section 32.21(e-1)(2) of

4

the Texas Penal Code even though the evidence at trial showed that he committed an offense pursuant to that subsection, and not Section 32.21(d).  In response, the State maintains that Lennox failed to preserve his jury-instruction complaints for our review because he failed to bring the claimed errors to the trial court's attention.

### A. Jury Charge Error Standard of Review

Rule 33.1 of the Texas Rules of Appellate Procedure states that, in order to present a complaint for an appellate court's review, the record must demonstrate the following:

> (1)    the complaint was made to the trial court by a timely request, objection, or motion that:
>
> > (A)    stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
> >
> > (B)    complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and
>
> (2)    the trial court:
>
> > (A)    ruled on the request, objection, or motion, either expressly or implicitly; or
> >
> > (B)    refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1.

While Rule 33.1 applies to many, if not most, errors presented on appeal, it does not apply when a party asserts an error in the trial court's jury instructions.  Instead, "[w]e employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552,

554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)). In accordance with the discussion above, clearly, the trial court's guilt/innocence charge contained error. Yet, Lennox did not object to the court's instructions during trial.

The level of harm that must be shown as having resulted from an erroneous jury instruction depends on whether the appellant properly objected to the error at trial. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). When a proper objection is made at trial, reversal is required if there is "some harm" "calculated to injure the rights of the defendant." *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). But, as in this case, "[w]hen the defendant fails to object . . . to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza*, 686 S.W.2d at 171). In evaluating a claim of egregious harm, we must decide whether the error created such harm that the appellant did not have a "fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19; *see Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "Neither the State nor the defendant has a burden to prove harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

As always, "the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. A trial court must submit a charge "setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application." *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "It is not the function of the charge merely to avoid misleading or confusing the jury[;] it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado*, 235 S.W.3d at 249).

### B.      Guilt/Innocence Jury Charge

As the Texas Court of Criminal Appeals noted in its opinion on this matter,

> [I]f the State charges a forgery offense under subsections (d) or (e) of Section 32.21, but the facts show that the defendant's offense also falls under the value ladder in subsection (e-1) and (e-1) would result in a reduced offense classification, then the defendant is entitled to be convicted and punished under subsection (e-1). Under those circumstances, he may raise a claim that he is being prosecuted under the wrong statutory subsection as a basis for having his offense reduced under the value ladder.

*Green*, 682 S.W.3d at 278.[1]

The State's indictments against Lennox charged three counts of forgery[2] of a financial instrument in violation of Section 32.21(d) of the Texas Penal Code, which states,

---

[1]The Texas Court of Criminal Appeals consolidated *Green* and *Lennox*, granting review on February 24, 2021. On January 17, 2024, the Texas Court of Criminal Appeals issued its opinion on discretionary review.

[2]Forgery is defined in Section 32.21 of the Texas Penal Code as the act of altering, making, completing, executing, or authenticating a writing with the intent to defraud or harm another person. TEX. PENAL CODE ANN § 32.21.

(d)     *Subject to Subsection (e-1)*, an offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, *check*, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.

TEX. PENAL CODE ANN. § 32.21(d) (emphasis added).  Specifically, the State alleged in Count I as follows:

[O]n or about January 7, 2019[,] in Lamar County, Texas . . . [Lennox] did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the act.

The State asserted that the forged check was in the amount of $137.00.  Further, the State also included in its indictment a copy of the check.  Lennox was similarly charged in Counts II and III with forging and passing checks in the amounts of $130.00 and $150.00, respectively.  Copies of each of those checks were included in the indictment.  In addition, the State included two felony-enhancement paragraphs in each count.[3]

Lennox maintains that the three offenses, as proven at trial, amounted to class B misdemeanors in violation of Section 32.21(e-1)(2) of the Texas Penal Code.  Section 32.21(e-1)(2) states,

(e-1)   If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property[4] or service, an offense under this section is:

---

[3]Lennox pled "not true" to the two enhancement paragraphs, but the jury found them to be "true," and it assessed his sentences accordingly.

[4]Section 32.01(2)(C) of the Texas Penal Code states that "[p]roperty" refers to "a document, including money, that represents or embodies anything of value."  TEX. PENAL CODE ANN. § 32.01(2)(C).  Therefore, within that statutory scheme, the definition of property includes money.

8

. . . .

>    (2)     a Class B misdemeanor if the value of the property or service is $100 or more but less than $750.

TEX. PENAL CODE ANN. § 32.21(e-1)(2). According to Lennox, because the evidence proved only subsection (e-1)(2) class B misdemeanor offenses, the trial court had a sua sponte duty to instruct the jury in accordance with the proof at trial. Yet, the trial court instructed the jury as follows:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about January 7, 2019, in Lamar County, Texas, the Defendant, Bobby Carl Lennox aka Bobby Carl Leanox, did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the act, and the writing was a check, then you will find the Defendant *Guilty* of the offense of Forgery of a Financial Instrument as charged in Count One of the Indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict *Not Guilty*.

The next two paragraphs in the jury charge contained the trial court's instructions on the remaining two counts and essentially mirrored the same language, except for the dates of offense.

According to the State, Lennox failed to preserve his asserted error for appellate review because he did not raise it during the trial court proceedings. Lennox concedes that he did not make an objection to the trial court in regard to its jury instructions. However, we must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*,

9

357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Article 36.14 of the Texas Code of Criminal Procedure states, "[T]he judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. "[T]he judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge; this may require the judge to *sua sponte* provide the jury with the law applicable to the case, under Article 36.14." *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011).

There is no question that the evidence at trial showed that Lennox was guilty of three counts of forgery of a financial instrument by passing forged checks in exchange for the receipt of cash, with each check valued at $100.00 or more but less than $750.00. However, there was no instruction in the charge requiring the jury to determine Lennox's purpose for forging the checks; that is, to pass them in exchange for property. Likewise, there was no instruction asking the jury to determine the amounts of the checks that Lennox was alleged to have forged. Had there been, the jury would have had the responsibility, and the opportunity, to answer any questions regarding those elements. If the trial court had included the instructions in its jury charge, the jury would have potentially concluded that Lennox was guilty of three class B misdemeanors based on (e-1)(2) violations, instead of three state-jail-felony offenses in violation of subsection (d). Lennox was entitled to those instructions, and the trial court's failure to

10

sua sponte ask the jury to resolve the subsection (e-1)(2) purpose element[5] and the amount element resulted in jury-charge error.

Because Lennox did not object to the trial court's jury charge, we must evaluate whether the error constituted egregious harm. *See Ngo*, 175 S.W.3d at 743–44; *Almanza*, 686 S.W.2d at 171. "In determining whether there has been egregious harm, we consider (a) the jury charge as a whole; (b) the state of the evidence, including contested issues and the weight of probative evidence; (c) arguments of counsel[;] and (d) any other relevant information in the record." *Riley v. State*, 447 S.W.3d 918, 925 (Tex. App.—Texarkana 2014, no pet.) (citing *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006)).

As stated above, the trial court's charge did not include an instruction on the purpose or amount elements of subsection (e-1)(2), leaving the jury with no alternative but to find Lennox guilty of three state-jail-felony offenses pursuant to subsection (d). Furthermore, because the jurors found Lennox guilty of three state jail felonies, the court's punishment instructions contained an erroneous sentencing range for twice-enhanced state jail felonies. Accordingly, the jury charge, as a whole, weighs in favor of finding that the errors caused Lennox egregious harm.

Next, we examine the state of the evidence to determine whether the charge error related to a contested issue at trial. *See id.* (citing *Sanchez*, 209 S.W.3d at 121). The uncontroverted evidence presented at trial showed that Lennox forged three checks, took them to a Quick Track convenience store, passed them, and in return, received property in the form of money. That

---

[5]The Texas Court of Criminal Appeals stated, "We instead conclude that subsection (e-1) constitutes an element of a distinct forgery-to-obtain-property-or-services offense that may result in either an aggravated or reduced offense level as compared to the Class A misdemeanor default." *Green*, 682 S.W.3d at 275.

11

evidence was not contested at trial, which, in this situation, makes the charge error even more egregious. Because the evidence supported violations of subsection (e-1)(2) and not subsection (d), this factor weighs in favor of a finding of egregious harm.

During closing arguments, neither party discussed subsection (e-1)'s purpose element in an effort to distinguish it from a subsection (d) offense. The parties did refer to the amount of the forged checks in their closing arguments, but not in reference to a violation of subsection (e-1)(2). Consequently, the jury reached its guilty verdicts based on a violation of subsection (d) without having any knowledge of subsection (e-1)(2)'s existence. That was so despite the fact that the evidence presented by the State clearly supported the class B misdemeanor offense. Accordingly, this factor falls in favor of a finding of egregious harm.

The evidence at trial showed that Lennox violated Section 32.21(e-1)(2) of the Texas Penal Code when he forged and then passed three checks in return for cash. In each of those instances, Lennox received at least $100.00, but less than $750.00, making each of those offenses class B misdemeanors. Accordingly, the trial court had a sua sponte duty to instruct the jury on subsection (e-1)(2) because it was the law applicable to the case. This is so even if Lennox's counsel failed to object to the exclusion of such language in the charge. *See Taylor*, 332 S.W.3d at 486.

We, therefore, conclude that the trial court's guilt/innocence charge contained error that deprived Lennox of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. Lennox is entitled to modification of the judgments of conviction to reflect that he was convicted of three subsection (e-1)(2) class B misdemeanor offenses.

12

### C. Punishment Jury Charge

Lennox maintains that the trial court's punishment instructions contained an excessive sentencing range that was based on three state-jail-felony convictions (twice enhanced) and not three subsection (e-1)(2) class B misdemeanor convictions (twice enhanced). According to Lennox, the trial court's jury instructions exceeded the applicable punishment range and, therefore, caused him egregious harm. We first note that an asserted defective punishment charge like the one "in this case should be treated as jury-charge error subject to a harm analysis, rather than as an illegal sentence that generally automatically entitles a defendant to a new punishment hearing." *Bell v. State*, 635 S.W.3d 641, 647 (Tex. Crim. App. 2021) (per curiam).

A person who has been found "guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days." TEX. PENAL CODE ANN. § 12.35(a) (Supp.). But, as in this case,

> [i]f it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies other than a state jail felony punishable under Section 12.35(a), and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a felony of the second degree.

TEX. PENAL CODE ANN. § 12.425(b). "An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years." TEX. PENAL CODE ANN. § 12.33(a).

The trial court instructed the jury accordingly. The jury charge on punishment stated as follows:

13

You are instructed that the range of punishment for the offense of Forgery of a Financial Instrument as charged in Counts One, Two and Three of the Indictment, is not less than one hundred eighty (180) days but not more than two (2) years confinement in the Texas Department of Criminal Justice – State Jail Division and an optional fine not to exceed $10,000.00.

You are further instructed that our law provides that if the Defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first conviction having become final, on conviction the Defendant shall be punished for a term of not less than two (2) years but not more than twenty (20) years in the Texas Department of Criminal Justice – Institutional Division.

Lennox did not object to the contents of the trial court's punishment charge. Although his failure to object does not prevent this Court's review of his complaint, as we explain above, Lennox is required to show that he suffered egregious harm because of errors in the trial court's punishment charge. *See Ngo*, 175 S.W.3d at 743–44; *Almanza*, 686 S.W.2d at 171.

As discussed above, because the trial court failed to include subsection (e-1)(2) language in its guilt/innocence charge, the punishment charge did not contain instructions on the applicable punishment range for a class B misdemeanor conviction, twice enhanced.

A class B misdemeanor offense carries with it a sentence of "(1) a fine not to exceed $2,000; (2) confinement in jail for a term not to exceed 180 days; or (3) both such fine and confinement." TEX. PENAL CODE ANN. § 12.22(1)–(3). However, due to Lennox's two prior felonies, the punishment range would have been slightly elevated to "(1) a fine not to exceed $2,000; (2) confinement in jail for any term of not more than 180 days or less than 30 days; or (3) both such fine and confinement." TEX. PENAL CODE ANN. § 12.43(b)(1)–(3). The inclusion

of a state-jail-felony punishment range twice enhanced, and the exclusion of the class B misdemeanor punishment range twice enhanced, clearly caused Lennox egregious harm.

Furthermore, in its closing argument, the State directed the jury to the punishment range for a second-degree felony. It argued, "Does he warrant -- is he the type of person that warrants leniency and a sentence of two years? Or is he the type of person that maybe deserves something closer to 20." Emphasizing Lennox's two prior felony convictions and that he received a four-year sentence and a seven-year sentence as the result of those convictions, the State argued, "But clearly he hasn't learned his lesson. He continues to steal and victimize." The State continued, "I don't think 20 is enough. That's not enough time. Twenty years is not enough time. I think the citizens of the state of Texas need to be protected much longer. Unfortunately[,] you don't have that choice." In concluding its closing argument, the State said, "So I ask that you take this as seriously as it is and consider Mr. Lennox's over 20-year criminal history and finally tell him enough is enough and give him 20 years as a habitual offender because he is. Maybe then hopefully he will learn his lesson."

The State argued, not surprisingly, that Lennox deserved the maximum punishment of twenty years' confinement in prison, as opposed to a sentence ranging from 30 days to 180 days in the county jail. The jury returned three sentences of seventeen years' confinement. As a result, the State's argument further added to the harm caused by the trial court's erroneous jury instructions.

Based on the entire punishment charge, the state of the evidence, and the State's closing argument, we conclude that the contents of the trial court's punishment charge created such harm that Lennox did not have a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171.

## III. Conclusion

We find there was egregiously harmful error in the guilt/innocence jury charge and that Lennox is entitled to modification of the judgments to reflect that he was convicted of three class B misdemeanor offenses. Furthermore, we find that the trial court's punishment charge contained egregious error. Accordingly, we reverse the judgments as to punishment and remand this case to the trial court for a new trial on punishment.

Scott E. Stevens
Chief Justice

Date Submitted:    October 23, 2024
Date Decided:    March 13, 2025

Do Not Publish

16